Case number 13-1198, James Harry Grier, et al., Petitioner v. United States Department of Housing and Urban Development. Mr. Bell, Petitioner v. AED, for the respondent. Mr. Bell, can you come to me on the other side? Mr. Grier, can you come to me on the other side? I was checking to make sure it was still morning. Good morning. May it please the Court. I'm James Bell on behalf of James Grier and Mansfield Gardens East in the appeal in which Mr. Grier and Mansfield Garden are the Petitioner. I suppose we probably find ourselves in a situation that's not unusual here in the D.C. Circuit, which is we have an administrative agency that reviewed the decision of an administrative law judge and took all of the parts of the decision from the administrative law judge which were in their favor and kept them and took all the portions of the decision that were in favor of my client and discarded them. Before we get to that, can we establish jurisdiction? Yes, Your Honor. And your reply brief says there's a certificate of service, and the only date contained on it was May 29, in which case, if that's key, you're in. Is that certificate of service in the record? I believe it's part of the appendix, Your Honor, but I haven't specifically laid hands on it in the anticipation of today. Do you know where in the record? Could you give us a site? I do not if I did not cite it, but I can certainly, I mean, as soon as I leave here, I can identify where it is or provide a copy if it's not in the appendix. I didn't realize that this. Well, we pay a lot of attention to jurisdictional issues. Yes, Your Honor. I didn't mean to throw you off totally. Well, with respect to this, I'm not sure whether we can stipulate as to the two differences or not, but my understanding of the paperwork without having laid eyes on it in anticipation of this, because I wrote, I did write the brief myself, was that the order itself was marked the 28th. There was no indication on the 28th as to what was done with it. There was no indication that it had been signed with the Secretary's seal or whatever seal the designee uses when he's acting for the Secretary. There's no indication in any way that it was promulgated to the public or put up on the Housing and Urban Development website. The only thing that we do know for sure is that they made service of this document, dated the following day. I believe my client received it some days after that, but in the interest of trying to comport with the case law, we went ahead and used that date of the 29th. With respect to the case law, our opponents have cited some cases which, Sam, for the proposition that there may be situations where that date, the 28th, may be the controlling date, but what we found here in the D.C. Circuit with respect to any statute that had similar language, that being the entry of the order being what was key, they all seem to break it down into three separate components, which it's not clear whether courts have anticipated it all happened simultaneously or not, but those three things, being the signing of the order, the promulgating of the order, and the service of the order. And here, one thing that we know for certain is the service of the order, and since it's part of what courts have considered in terms of the entry of the order before and it couldn't occur before that, we argue, of course, that 20 days from the date of service is appropriate because the order could not be entered under the definition that's been used under every statute that we looked at that has entry as the starting  point. With respect to the document, are we agreed that that's what it says? The document that we don't have in front of us. The 28th is the date on it, and the 29th is the date that it says it was served. Is that correct? I'm sorry. We have agreement among counsel that if it does say May 29th, it's the? Yes, Your Honor. When you're relying on the date on the document in a court, it would be a good idea if you had that document. Agreed, Your Honor. I apologize. Are there other issues that Your Honor feels I should address before the merits? Not unless new matter is raised on that by the government. I suppose that there are two other preliminary issues that were raised in the brief of our opponents, that being a failure to raise some of the issues in our appeal on the record below. In the briefing, I have pointed out the places in prior proceedings where those issues were all raised, especially in front of the designee for the secretary. And so with respect to that argument, we believe that it lacks merit. As to the portions of the argument on the merits, as Your Honors are aware, the original decision by the ALJ was for initially for numbers that match the numbers that the ALJ proposed, an additional $262,500. With respect to those numbers, the ALJ reduced them on two grounds. One, the ability to pay of my client, which despite some issues with accounting and the testimony of my client, there was some agreement about the financial condition of my client, NMGE, during the hearing before the ALJ. As a result, he reduced that $1.262 down to $450,000. And the other number stayed the number that was jointly and severally available between Mr. Greer and NMGE stayed steady at $262,500. Then in addition to making the reduction for the ability to pay, which of course is a factor fairly applied under the criteria for assessing civil money penalties, he made the further reduction based on what he claimed was as justice requires. And that reduction was an additional 25 percent, bringing the total of the first number down to $196,875 and the second number down to $337,500. He did that because he claimed over a series of exclamations, which are on page 6 and 7 of our brief, bulleted, and I believe that we've captured each and every one from the opinion that HUD had engaged in significant malfeasance and that it had engaged in malicious prosecution with respect to seeking these particular money penalties against my client. He justified in the record what the reasoning was for that, and he based it upon being able to sit and watch the testimony of various government witnesses. He, and no one else in the history of the world ever, will see what those government witnesses had to say with the look on their face, et cetera. And as we've submitted in the briefs, I mean, this is one of the great engines of truth-telling, is the ability to sit and watch a witness and see if perhaps they're saying exactly the opposite thing that their words say. Now, unfortunately, the designee went back, looked at some of the testimony of a single government witness, and determined, based on what he read, just the words alone, that her words could be interpreted a different way, that her words could be interpreted a different way. Well, I suppose it wouldn't be a credibility finding in a vacuum. I understand that, except it accepts the proposition that all her words were credible, which is consistent with what the ALJ said, but that taken as a whole, they mean something different from what the ALJ said. I suppose, Your Honor, that that is one way that you could view that. You could also – there's no indication that there was an equal comparison at any time, that there was any belief on the part of the ALJ that what she said was credible. In fact, there are a lot of statements in the record that suggest that the ALJ, the only person to see her testify, believed that what she said was incredible and said that about a number of government witnesses, which is how he came to the conclusion that he should, in fact, reduce this in the interest of justice because of the misbehavior of HUD. Don't we generally afford deference to the facts found by an agency even if the agency is making those facts based on documentary evidence as opposed to testimonial? Well, Your Honor, my understanding is that, of course, that's the case. I mean, we have created a world in which administrative law exists, and if there were not some deference to it, then the system would break down. Well, even in adjudicative court law of the city of Bessemer, I think I'm right. The Supreme Court in the city of Bessemer said that the appellate courts would defer to the trial courts' credibility decisions even if they were based on documentary evidence. Yes, Your Honor. With respect to this, there was great deference shown to whomever it was that got an opportunity to observe those witnesses firsthand. And though even if they didn't get an opportunity, if the fact finder is acting on documentary evidence, we still defer to the fact finder. And that would make my case stronger, and I thank you. The case law specifically with respect to this kind of testimony. In fact, what you're missing in what I'm asking is don't we owe deference to the agency? Oh, well, yes, Your Honor. We also owe deference to the agency. The problem is that the courts have decided what level of deference is owed to the agency in a situation where they are disregarding the testimonial evidence based upon watching and making credibility determinations. And that requires heightened scrutiny. That requires an explanation of all the reasons that the Secretary's designee in this instance said, you know what, even though there was this discussion about what was seen and how he didn't believe the witnesses and what this particular witness said and her credibility, the designee in our case doesn't go through and say, oh, here are all the reasons why HUD didn't actually engage in any malfeasance. It says, well, here's one witness out of all of them that he said that he listened to and came to the conclusion that he had seen this malfeasance. Here's one witness, and we're going to disregard what she says, not because of any issue of credibility, because, heck, she's not in front of me, but because I think that her words could be read a different way. That's not heightened scrutiny, and that's not even a good explanation. The good explanation is if I read it this way, he pays a lot more penalties. We get rid of all the – we get rid of all the parts of this decision. And we don't like them. We get to keep the parts that we do. No deference was given to the only human being that got an opportunity to sit in that room and look those people in the eye – look those people in the eye, and when he did it, he made the determination that some of them were lying, that what some of them were saying was malicious, and that as a result that it should be colored – that HUD should be tarred and feathered with the truthfulness or lax thereof of its witnesses. And that didn't make it through the designee's opinion. And so while I admit that some deference is required to what the – to what the designee did, this Court is not required to follow the arbitrary and capricious actions of the designee in totally disregarding the only individual who was able to see the testimonial evidence, which, as case law since – since the, you know, since early English times, has shown as one of the greatest forces for dividing truth. I see that my time is up. Okay. Thank you. Good afternoon, Your Honors. May it please the Court. Imran Zaidi for the Respondent, HUD. Your Honors, let me first address the matter of jurisdiction in this case. The statute defining judicial review here provides that an agency – that an individual – a petitioner must file a petition for review within 20 days of entry of an agency's decision. Now, let the government be clear up front. We brought this to the Court's attention because we believe this appeal period to be jurisdictional. This Court has not addressed entry – this Court has not addressed what entry of an agency decision means. Energy probe, which my colleague has cited, is a decision citing the Hobbs Act's judicial review provision, which specifically mandates that an agency provide notice upon issuance of an order. And so in that case, when this Court defined entry to mean signed, sealed, and mandated by the statute, this Court has not addressed – What did the agency do here that constituted entry within the terms of the statute? That constituted what, Your Honor? That constituted entry. Actually, Your Honor, we believe that the actual date that the decision was signed, which is May 28, 2013, which was 21 days before the petition for review was filed. Suppose they had not served it on the party until 10 days later. Would they just have had 10 days in which to appeal from it? Your Honor, of course, practically speaking, I don't believe that happens. But according to the government's construction of this, yes, it would be 10 days. And we've got to – But the agency can control the time within which the affected party can appeal simply by when it serves it. The agency does. The agency has – Because if 19 days later, you'd only have one day in which to – Your Honor, certainly, you would be getting into territory where you'd be bringing potential due process concerns or other very serious practical considerations. And we recognize, the government recognizes that there are other reasonable interpretations of the statute. Again, we brought this to the Court's attention because we believe this to be jurisdictional. But we – it is worth noting that in the Eighth Circuit case that the government cited, it was interpreting order. And specifically – Well, assuming it is jurisdictional, which it may well be – Pardon me? Assuming it is jurisdictional, which it may well be, we still have to decide what entry means for purposes of that jurisdictional statute. There's no question, Your Honor. And it's for that purpose that we relied on the Kelly decision in the Eighth Circuit. In that case, distinguished service as a distinct function from the actual date of an order. Yeah, well, entry is what we're trying to determine. Correct. Why shouldn't we follow Energy Probe? You said there are other things lurking in the Hobbs Act. But it looks to me that the passage which says what has to be done, just relies on the word entry. Well, Your Honor, the reason I believe Energy Probe is distinguishable is because in that case, signed, served – signed, sealed, and served will always happen on the same day. So the Court was not, in fact, confronted with the problem of how to define entry when you have a decision dated one day and served on another. And that is the problem that this panel is confronted with. And we believe there's no guidance. But we do believe that the agency's construction, which is that entry is the date a decision was signed, is the more valid construction. And again, it's worth noting that as the Eighth Circuit pointed out, service is a distinct function. And Congress specifically knows how to direct service as the relevant event for commencing appeal period, as it does in other circumstances, such as, for instance, Title VII. But again, we believe this petition can be readily denied on the merits, and we're happy to turn to those. Yeah, but we can't do that unless we have jurisdiction. That is correct, Your Honor. We believe the Court does not. But again, this is not an issue. This Court has not defined entry in this context, and we believe signed is a more reasonable construction of entry than the date a decision is served. Now, turning, of course, to the Section 236 program, it very specifically and clearly provides only three mechanisms for terminating an insurance contract – prepayment of a mortgage, transfer of a mortgage to HUD, or voluntary termination of a mortgage. None of these things happened here. Petitioners did not voluntarily terminate their mortgage, because they actually requested HUD's approval for their termination, and that request was denied. They did not prepay the mortgage. They instead created another entity, illegally secured funds from their own reserve for replacement fund, and took out a loan, transferred that mortgage to the entity that they had created, and at no time did they seek, let alone obtain, HUD's approval during that process. So we don't believe there's any question as to liability under Section 236. Under the Section 8 program, liability is even more clear. Petitioners in this regard appear to misunderstand that they were under, at all times, a statutory and regulatory obligation to provide one year's notice before either terminating their housing assistance contract or raising rents on any of their subsidized tenants. And they do not dispute that they did not satisfy that requirement. As to rent, they specifically refer to the overall payment that they did not increase. But what they needed to not increase was the tenant-specific payments. So under both the Section 236 and Section 8 programs, we believe liability here is clear. Now turning to penalties, let me first note that both agency decision-makers here agreed as to the egregiousness and the extent of petitioner's violations. And that those violations warranted penalties at least as high as those requested by HUD. Now the ALJ, in fact, initially awarded a penalty of $2.3 million before later reducing that penalty based on the two factors my colleague has pointed out, ability to pay and such other matters as justice may require, under which the agency, under which the ALJ addressed bad faith, what he perceived to be bad faith on HUD's part. Now looking at the ability to pay factor, it's first important to note that this is an affirmative defense. So petitioners need to establish this. That is an especially important fact when you consider that petitioners do not dispute that they have never submitted any evidence of their finances. Under those circumstances, the secretarial designee's decision here simply recognized that you cannot invoke and establish the affirmative defense of ability to pay while not disclosing any of your financial details. Now turning to the such other matters as justice may require finding, your honors, frankly in this respect we believe the ALJ's decision was a bit peculiar. What the ALJ said was that, was that the agency could not pick a specific amount that would force petitioners, that would force the petitioners out of business. And yet, and the assumption being that that was an amount that they chose as a target. And yet the exact and only testimonial evidence that they cited for that was an answer to the question of why did HUD reduce the penalty of one specific count from $25,000 to $15,000. That's something that the ALJ never considered. It is very clear and the secretarial designee cleared this up. And to be clear, that is the decision that this court is reviewing. As Judge Sentel pointed out, it is the secretarial designee's decision that is on review for this court. That is on substantial evidence or arbitrary and capricious review. The secretarial designee vacated both of the reductions that were applied by the ALJ and said that the ALJ clearly misunderstood that testimony as establishing that HUD was reducing its penalty request based on the value of petitioner's property. It's also worth noting that the ALJ himself described the sheer blazon of petitioner's scheme and that it also strongly supports a sizable penalty as a means to deter other would-be violators. Petitioner Greer believed he had found a loophole in HUD's regulations that would allow him to use the Montua Gardens East project for his own purposes. Had he succeeded, others would surely have attempted to follow his example. The penalty imposed on these petitioners should dissuade others from making such an attempt. Now that finding of the ALJ came in the context of the deterrence factor, which is one of the several regulatory factors that both agency decision-makers took into account in this case. That factors, that balancing is entitled to great discretion by this Court and we believe the ALJ's decision himself recognized the egregiousness of petitioner's violations. The Secretary simply corrected a couple of the reductions and returned the amount to the appropriate $1.47 million. If there are no further questions, we ask that the Court deny this petition for review. Thank you. Mr. Bell had no time left, but we'll give you a moment of rebellion. Thank you, Judge Brown. Just one with respect to the Eighth Circuit case, which I believe is U.S. Department of Agriculture versus Kelly that was mentioned as a potential ground for the idea that entry might mean something different. I read that case to say that the statutory language was filed within 30 days from the date of such order. And so the issue of entry, at least in our estimation, was not involved in that case. I should have asked the opposing counsel this, but is this filed anywhere? Going back to the entry question, is this decision of the designee filed somewhere on a date stamp? We were unable to find it, Your Honor. Do you know, counsel? I'll ask the government. No, Your Honor. We don't believe that it is. It is not? It is not. The meaning of entry is not real evident. That's true, Your Honor. With respect to the rest, I would just close with pointing the Court back to pages 6, 7, and 8, where I've laid out again the ALG's findings of various kinds of malfeasance against HUD. With respect to the position that my client has done wrong and there should be civil penalties, that's not what we've argued in this appeal. We haven't argued that my client is a saint or that this was a perfect scenario. What we've argued is that someone who was a neutral sat down, looked at the behavior of both parties, and found both parties to have done some pretty awful things and as a result crafted a civil money penalty that reflected that. And then a civil money penalty was retooled in order to only show the things that were talked about, which is that my client did, at least according to the ALJ and the designee, some things for which he should have suffered money penalties. We'd just like to see a return to the ALJ's opinion, which reflects both my client's ability to pay, which as elucidated in the briefs, is actually based both on stipulations that the parties made during that trial and information that they had handy, and on the reduction relating to the malfeasance of HUD, which the ALJ explains pretty well for himself. All right. Thank you, Mr. Bell. The case will be submitted.
judges: Brown, Williams, Sentelle